Our next case this morning is 25-1456, APB Realty, Inc. et al. v. Lebanon and Blue Mountain Railway, LLC. Your Honor, may it please the Court. Good morning. My name is Howard D'Amico. I am counsel here to APB Realty and to Mr. Bryant. So, as you've seen from our appellate brief, we really narrowed down our issue or issues back to really one issue for appeal. That issue, nonetheless, has separate parts to it. The question is as to whether or not the trial judge had sufficient of facts and law to support his ultimate post-trial conclusion that he could triple under State Law MGL 93A Sections 2 and 11, the $360,000 award that had been awarded effectively earlier on SGA on, frankly, both the conversion and the unjust enrichment counts. It is our position that the trial judge lacked either of those required elements. The trial judge lacked the factual basis and he lacked the legal basis. And I'll actually very briefly start with the legal basis first. Back to our pretrial conference, the trial judge recognized that the dispositive law issue here in the Commonwealth was the dispositive case was this auto flat case, an SJC case from 2014. And the trial judge recognized at the pretrial he recited his own findings from his adoption of the magistrate's findings that in order to find under 93A in Massachusetts for the troubling of damages, you had to show that requisite causal connection between an independent additional loss than an underlying common law count loss, well, a causal connection between any independent loss and the actions of the party. Frankly, at the pretrial, it seemed to me that he cautioned the LBM, LBMR, that they didn't appear to have that yet, that they needed an independent event. We got to the trial, and as you know, this trial was relatively succinct. Counsel, I don't mean to interrupt, but we have limited time. So I have a question for you. I want to preface it this way. So if I go to a car dealer and I want to trade in my car and buy another car, and the car dealer says, hey, the salesman says, let's take a ride in this beauty over here. I'll take the keys to your car for now. While you have our car, that'll just be my security. And so then he subsequently engages in a classic car salesman's technique. He's unhorsed me. I no longer have my car. And he uses that fact. He won't give me the keys to my car back as part of his attempt to leverage me into purchasing a car. So that's a trespass to chattel. That's a tort, common law tort. But what makes it different, what gives it that rascality that makes it an unfair trade practice under the Consumer Protection Statutes here, 93A, is that he has used it as leverage. That's classic. You have a tort that's been committed. You've got a 93A violation. You can't get double recovery. You can't recover damages, the same damages for both. But you can recover the damages. And because there's the additional rascality that brings it under 93A, it can be trebled. How is what the court found the fraudulent intentionally and knowing misrepresentation that was made to the contract, how is that not sufficient rascality to bring this under the classic definition that I have just proposed to you? So, Your Honor, I agree with 98% of your premise, the car dealership premise. And I can tell you in the practice of law generally, lawyers will see it all too often where you've got a decision, if you will, on count one. You owe $100,000. And before we work on count two, you owe me $100,000. And they say, well, hey, I'm not going to address that until we figure out a settlement on count two. All day long, that's your car dealership example. That's 93A. All day long, that's 93A. I can see that, Your Honor. That is not what occurred here. That's the subtlety of the difference of the distinction the trial judge was looking for in February, and it did not appear at the trial in April. There was no, no, I will only give you your car back if you cut a deal. There's this concept that I will acknowledge that Mr. Bryant kept the money and wanted to press the deal. But there's no piece of evidence, no singular piece of evidence whatsoever that the car dealer said, I will only give you your car back if you do a deal. No, no, here you have an actual conversion. I was using a trespass to chattel, but here it's a conversion. The rascality here is the perjurious part of it. So the rascality, if I may, it's my own client, but already occurred with the conversion. Exactly. The irony, though, the auto flat case needs an independent loss. The trial judge acknowledged, Your Honor, it's in our record that the 360 came to Mr. Bryant fairly and reasonably. But it was the retention of it, right, that caused the problem? It creates the conversion. If the two were always the same. But there was also pressure to try to get it so that they could keep it. We create a fake document. We bring a lawsuit all to try to keep this money or get a negotiation of this money that should have just been returned. So, in all respect, that's the nail. That's the distinction I make. There was no evidence whatsoever that Mr. Bryant, under any circumstances, would give the car back or give the money back. The conversion had already occurred. There would need to be an independent event where he said, Unless you do X. So the trial judge has a finding of fact. He says, Look, I found that Mr. Bryant used the deck action in order to try to maybe obtain a settlement. We had to give less back. Right. It defies the record. The record. But bear with me, Your Honor. Your record is clear that the trial judge found, frankly, Mr. Bryant to be close to the devil incarnate. Okay. He had no perception that Mr. Bryant was a straightforward person. How do you distinguish? So Exhibit Source, which is a mass appeals court case, that case seems to be the same thing. I take your security deposit. I then make up later that you have damaged the property so that I don't have to give you the security deposit back. And that's made up. And the mass appeals court said treble damages because you're using the fake claim about the damage to try to keep the security deposit that you had an obligation to give back. And you made up an invoice to try to keep the 360,000 that you should have given back. But there's no finding of fact. There's no basis to create a finding of fact that Mr. Bryant used the invoice, quote, to try to keep. He produced it in discovery in a lawsuit designed to keep the money. That's not an evidence. It's not an evidence that he pushed that the invoice was in discovery? That is an evidence. There's nothing in evidence to say that he used the invoice to try to keep the money. That's just an inference that a trial judge can make based on a set of facts that leads to that pretty simple conclusion. There's no set of facts that lead to a conclusion. There's no piece of evidence other than a general sense that, oh, this person's a Rascalian. And so he did it for that purpose. But the alternate thought, if he's a Rascalian, would be he's not giving it back. APB sought a declaratory judgment that the $360,000 deposit did not need to be returned to LBMR, alleging that the deposit was specifically described as nonrefundable. It wasn't an issue in the case? It was an issue to declare it that it was nonrefundable. There's no set of facts, though, where anybody created a single statement of fact that if he had lost, he would have given it back. There were many opportunities for Blue Mountain to present evidence that there had been a single settlement discussion where Brian's position was, I'll give you some of it back. No, but he's going for the whole thing? He didn't just try to keep it. He's already kept it. He's creating false documents to try to keep it. On June 17th, he had already kept it. The event in August doesn't change that. Absent a piece of evidence that from August forward, he did something else. Why did he bring the lawsuit that Judge Howard just read to get the declaratory judgment? Why did he do that? I'm sorry? Why did Judge Howard just read a declaratory judgment to keep the $360,000? Why did he bring the declaratory judgment? He may have brought it to win because he thought he would win on it, but it doesn't say that if he didn't win, he would give any of it back. There's a linchpin piece that's not in evidence, and that's the concept. If the trial judge believes he's a Raskalian, then how does he have a finding that says, oh, not so much? He would have given some back if there had been a settlement. That's never offered. Thank you. That's never proposed. Thank you. Quickly, the only comment I would make further with regard to the exhibit source case is we would rely on the SJC case, and that's the auto flat case. Thank you. It says differently. Thank you. Thank you. Good morning, Your Honors. May it please the Court, Christopher Fitzgerald for the appellee, Lebanon and Blue Mountain Railway, LLC. Could you pick your mic? Sorry, is that better? Thank you. Thank you, Your Honors. This case arises, as you know, out of a contemplated transaction between my client, Lebanon and Blue Mountain Railway, which was a potential purchaser of rail cars in APB Realty, Inc., which was acting as a broker in connection with that potential transaction. At APB's insistence and in response to an invoice APB provided, L.B. Marr provided APB with a deposit of $360,000 on June 17, 2021. The invoice that deposit was sent in response to did not say the deposit was nonrefundable. It referenced it as a discount. Ultimately, the transaction fell through. APB did not return the deposit. Instead, it sued L.B. Marr, claiming it had a contractual right to retain that deposit. But there was no contract, as the lower court found, and APB never had a right to keep the deposit contractual or otherwise. In support of its effort to keep the deposit, APB's principal, Kirk Bryant, fraudulently altered an invoice that he sent to L.B. Marr on June 17. And he did it on August 12, 2021. And I'm going to touch a bit during my argument on the chronology in this case, because I think it speaks to how the fraudulent invoice was used as part of APB's overall effort to keep the deposit. That alteration was made on August 12, as I mentioned. On the morning of August 12, L.B. Marr's principal, Mr. Keller, emailed APB requesting a price adjustment. That's just one piece of the chronology. And hours later, the alteration happened. And the only reason we found out that the alteration happened, and this is set forth in the trial brief and other parts of the record, was the metadata embedded in the document showed down to the second when that document was created. So we knew. There was a lot of discussion during Appellant's argument about the fact that there wasn't sufficient evidence at trial. I think there was plenty of evidence, both documentary and circumstantial evidence, that APB and Mr. Bryant used this fraudulently altered invoice in a coercive way to try to either convince L.B. Marr to close the deal to protect its commission or, as Judge Wolf noted, to try to facilitate some sort of settlement. And that finding is reviewed for clear error? Yes, Your Honor. The Arthur B. Little case from this court makes it clear that the factual fact or whether or not a causal connection exists between an unfair and deceptive act and, you know, damages that result therefrom is a question of fact that's to be reviewed on the clear error standard. So L.B. Marr proved in trial that that causal connection existed. There was some discussion about a pretrial hearing and a caution that the trial judge may have referenced during that pretrial hearing about the existence of evidence to support that causal connection. With respect, we're not talking about the evidence elicited at the pretrial hearing. We're not talking about the evidence elicited on summary judgment. We're talking about the evidence elicited at trial. And the evidence elicited at trial was different, and I made note of this just last night. If you compare it to the evidence at summary judgment, there's a few key points that are important. The first point, when was the fraudulent invoice created? At his deposition, Mr. Bryant said, I have no idea. You can find that in Record Appendix 125. At trial, he admitted when confronted with the metadata. Yeah, I made it on August 12th, 3.18 p.m. When did you send it to Mr. Keller? At summary judgment, based on his deposition testimony, I have no idea. At trial, he admitted that he sent it to Mr. Keller before he filed the lawsuit. It was sent to Mr. Keller before he filed the lawsuit. It was used as part of his claims in the lawsuit. And even after he filed the lawsuit, Mr. Bryant admitted that he continued to engage in discussions with Mr. Keller in an effort to try to close this deal. So all of those things are happening under the cloud of the altered invoice. And all of those things were pieces of evidence that the judge considered in finding that a causal connection existed. There are other causal connection evidence that's spelled out in our brief. I included a short chronology in the brief. I don't know if the court wants to hear it again. I assume you've read it, but I think the evidence was clear at trial that Mr. Bryant saw this transaction falling through. He was receiving pressure from the owners, saying they were going to pull the plug on the deal if he didn't close. The next day, Mr. Keller is asking for a price adjustment, and what does he do? He changes the document. And he admitted at trial that if the deposit were refundable and the deal didn't go through, he and APB would make nothing. So by changing the document, he shifted the risk of loss of this transaction falling through from APB to LVMR. But he never had the contractual right or legal right to do that. And to use the altered invoice in the way that he did was coercive, the sort of classic coercive extortionate conduct that I think this court and other courts in Massachusetts have repeatedly found to rise to the level of a 93A violation. Could you just briefly address your argument about why this appeal may be frivolous? Absolutely. I think the bottom line on this appeal, the evidence at trial from Mr. Bryant's perspective was his own testimony. That evidence was pretty flatly rejected by the trial court. Mr. Bryant contends that there was no evidence in his brief, no evidence whatsoever on a causal connection. I think the district court's decision dispels that notion in its entirety. There was evidence, circumstantial evidence, and a lack of documentary evidence corroborating his statement that this telephone discussion between he and Mr. Keller wasn't available to testify. There is at least some legal principle about causation, right? I mean, so ultimately, this appeal is about reviewing the facts. It's the judge make clear facts. I mean, it should be a very high standard before we sanction people for bringing appeals. So I guess I'm trying to probe a little bit. There's a legal architecture to the appeal, and then it's a question of, well, did the judge make appropriate factual findings, right? In my view, respectfully, the bottom line on this appeal is it's a challenge to the credibility determination that Judge Wolf made in deciding the case and rejecting Mr. Bryant's testimony. And that's a really hard road to hoe, but it can be done. And so if that's what this is all about, does that really move it into the realm of frivolous or just this is not going to be an easy appeal to win? Well, I would point the court to the case that's cited in my motion for sanctions. It's an older case. It's a 1980s case, Scarpa v. Murphy. But at the end of that decision, the court makes pretty clear that we view appeals based on a challenge to credibility findings to be frivolous. And the court in that case did award fees and costs in connection with that challenge. And I think this case really boils down to a simple challenge to Judge Wolf's findings on the credibility of Mr. Bryant's testimony and his decision to reject that testimony. Thank you. If there are no more questions, I'll give you the two minutes back. Thank you very much. Thank you. Thank you.